2012 Ark. 349

**Billy Wayne STEWART, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 12–131.**

Supreme Court of Arkansas.

Sept. 27, 2012.

Crumpton & Collins, P.A., Cabot, by: James Gregory Crumpton, for appellant.

Dustin McDaniel, Att'y Gen., by: Jake H. Jones, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Appellant was convicted of rape and now appeals his conviction, arguing the circuit court erred in not allowing testimony concerning the victim's previous sexual conduct. This court assumed this case from the court of appeals; therefore, we have jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(b). We hold that appellant's argument is not preserved for this court's review and affirm.

In a felony information filed December 6, 2010, appellant was charged with the rape of J.H. Specifically, appellant was charged with violating Ark.Code Ann. § 5–14–103(a)(2)(B) (Repl.2005), which provides that a person commits rape if he or she

engages in sexual intercourse or deviate sexual activity with another person who is incapable of consent because he or she is mentally defective. At the time of the rape, J.H. was twenty-three years old but functioned on a first- or second-grade level. Appellant, who was a friend of the family, stayed with J.H. and her parents for a short time and had sex with J.H. on at least one occasion, which resulted in a pregnancy. A paternity test confirmed that appellant was the father of J.H.'s baby.

On August 15, 2011, the State filed a motion in limine in which it argued that the Defendant might attempt to introduce evidence of the victim's sexual activity with other individuals and asked that any such evidence be excluded pursuant to the rape-shield statute, codified at Ark.Code Ann. § 16–42–101 (Repl.1999). At a pretrial hearing held August 30, 2011, the defense explained that it intended to introduce evidence only of "matters that Mr. Stewart participated with the Prosecutrix and/or that he learned directly from her," but that it did not intend to call any third-party witnesses to testify about any sexual encounters. In response, the State argued that such testimony by the defendant would be hearsay and would violate the rape-shield statute. The following exchange then occurred:

> THE COURT: Well is he trying to introduce it to show that she's not mentally ill?
>
> MR. FRAISER: No, the statute doesn't say—you not only have to be mentally ill, you have to have a mental illness or defect, but it has to be such a defect or an illness that, quite frankly, you're engaging in some type of behavior and you don't realize it's sex. Well if you've engaged in the behavior before, you know it's sex or if you've experienced that particular pleasure, sensation, or whatever, that would negate whether or not she knows it's a sex act, for example, or the nature and consequence of the sex act—wearing a condom, for example, or not wearing a condom.
>
> THE COURT: His defense is that she knew that she was engaging in sexual intercourse, and therefore, she's not mentally ill?
>
> MR. FRAISER: That's correct.
>
> . . . .
>
> THE COURT: Well I agree with the State that he can bring in things that involve him and her, not anything that she may have said about a third party, anything that she may have done with a third party, all that is protected by the statute, regardless of the fact that he's trying to show that she's not mentally ill according to the definition.

A jury trial was held on August 31 and September 1, 2011. During the testimony of Tracy Sanchez, an employee of the Cooper Anthony Mercy Child Advocacy Center who interviewed the victim, defense counsel made the following argument:

> MR. FRAISER: Again, this is a potential witness in this interview she disclosed that she had—she being [J.H.]—said that she was raped at the age of eighteen at Lakeside by one or more boys there. It came out unsolicited. She also said that there was a man by the name of Hil–Ray—it sounds like Hillary at first but when you slow it down it's Hil–Ray—had also raped her and I want to again get the Court's ruling if you're going to prohibit me from going into anything—
>
> MS. LAWRENCE: Violation of rape shield.
>
> THE COURT: And what is the relevance of that?

MR. FRAISER: Well again, that's why I'm approaching. I want a ruling before I get anywhere close to the edge.

THE COURT: Can you tell me what the relevance is?

MR. FRAISER: Just it goes back to whether or not she knew what sex was or wasn't.

THE COURT: I think I've already ruled on that and I'll stand by that ruling.

During the presentation of his defense, appellant testified on his own behalf and had to be cautioned twice for mentioning a man named Hilray and intimating that Hilray had been the victim's boyfriend. After the defense rested, defense counsel made the following argument:

MR. FRAISER: At this time I'd ask the Court to reconsider the prohibition with respect to the Rape Shield or the specific one is not—in her interview with Tracy Sanchez she discloses that she was raped on two prior occasions. Then she also—it sounds on the tape as though it's Hillary—that she had a boyfriend named Hillary. It's not Hillary, it's Hilray and that's what he was—when he mention the Hilray and the objection, that was an instance where according to him she told him that they'd had a relationship before.

THE COURT: She and Hilray?

MR. FRAISER: She and Hilray. And that she disclosed it to him, but it was part of something that wasn't necessarily discussed on that one single day, only that it was something that they had talked about between the two of them.

THE COURT: Well how is that even relevant to whether or not he had sexual intercourse with her?

MR. FRAISER: Well, it's not as to the sexual intercourse angle. It's whether or not she appreciated the sex act or the consequences of it or that she even knew.

THE COURT: That she was raped?

MR. FRAISER: No, not the rape. Hilray was not—according to what he would have testified to, that was not a force situation. That was a situation where it was consensual between her and a guy named Hilray.

THE COURT: Well, I think that you're asking us to try another case that's not before us and that's the whole purpose of the Rape Shield statute, so my prior ruling stands on that.

The jury found appellant guilty of rape and recommended a sentence of seventy years' imprisonment, which was accepted by the court. A judgment and commitment order was entered on September 13, 2011, and appellant filed a timely notice of appeal on September 22, 2011.

For his only point on appeal, appellant argues that the circuit court erred in not allowing testimony concerning the victim's prior sexual conduct. Under our rape-shield law, evidence of a victim's prior sexual conduct is not admissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. Ark.Code Ann. § 16–42–101(b); *Turner v. State*, 355 Ark. 541, 141 S.W.3d 352 (2004). An exception is granted where the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Turner, supra.* The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Id.* Accordingly, the circuit court is vested with a great deal of discretion in determin-

ing whether the evidence is relevant, and we will not overturn the circuit court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.*

On appeal, appellant cites to Ark.Code Ann. § 5–14–102(e) (Repl.2006), which provides that when the criminality of conduct depends on a victim's being incapable of consent because he or she is mentally defective or mentally incapacitated, it is an affirmative defense that the actor reasonably believed that the victim was capable of consent. Appellant argues that because of conversations he had with the victim, he believed that she had previously engaged in consensual sexual activity and thus believed that she was capable of giving consent. Appellant contends that the "proffered" testimony concerning Hilray would have supported this affirmative defense.

In support, appellant cites to *State v. Cuni*, 159 N.J. 584, 733 A.2d 414 (1999), in which the New Jersey Supreme Court discussed the issue of whether that state's rape-shield law may be applied to exclude evidence of past sexual conduct that is offered to show that the victim had the mental capacity to consent to sexual contact. In that case, the defendant sought to introduce evidence of two sexual incidents involving the victim that occurred eleven years previously. The court first affirmed the trial court's determination that the defendant's non-compliance with the procedural requirements of the rape-shield statute required the exclusion of the evidence. The court also explained, however, that

> [w]henever the confrontation rights of a defendant are considered in connection with the State's interest in excluding evidence under the Rape Shield Law, courts must engage in a two-step analysis: first, "whether the evidence was relevant to the defense[,]" and second, "[i]f the evidence is relevant ... whether its probative value outweighs its prejudicial effect."

*Id.* at 423 (citation omitted). In that case, the court concluded that any evidentiary connection between the victim's prior sexual experiences and the current sexual encounter was remote and attenuated. The court also found that there was no indication that the victim was not a willing participant in either of the previous sexual encounters, which meant those prior incidents did not tend to prove that the victim had the ability to exercise consent. The court stated that "[t]he critical issue in this case is the victim's capacity to consent in the sense that if she was unwilling to engage in sexual acts, she had the mental and emotional ability to refuse." *Id.* at 424.

In the present case, appellant argues that unlike the facts of *Cuni*, the previous sexual acts of the victim were not limited to two remote incidents of consensual sex, but included two previous allegations of rape. Thus, these statements showed that the victim had been unwilling to engage in sexual acts before and "had the mental and emotional ability to refuse." Appellant argues that the probative value of this "proffered" testimony outweighed any possible prejudice and that this court should reverse the circuit court's ruling. Finally, appellant makes a one-sentence argument that the exclusion of this evidence violated his constitutional right of confrontation.

In response, the State first argues that appellant's argument is not preserved for our review because appellant's reliance on Ark.Code Ann. § 5–14–102(e), and his argument that he was denied the opportunity to present an affirmative defense regarding capacity to consent, are raised for the first time on appeal. The State contends that appellant never invoked this statute or affirmative defense below, the jury was not instructed on it, and there was no proffer of a jury instruction. Likewise, the State argues, appellant's one-sentence

confrontation clause-argument is also raised for the first time on appeal and should not be addressed by this court.

In addition, the State argues that appellant failed to make a proffer of the evidence he sought to admit below, which precludes review of the issue on appeal. Appellant filed no written motion pursuant to Ark.Code Ann. § 16–42–101(c)(1), and at the pretrial hearing on the State's motion in limine, appellant made no proffer of any evidence he wished the court to consider, but only presented argument by counsel. Finally, the State asserts, even if this court were to reach the merits of appellant's argument on appeal, there was no abuse of discretion by the circuit court.

We agree that the arguments presented in appellant's brief are raised for the first time on appeal. Below, appellant asserted that the evidence of the victim's previous sexual conduct was relevant to show that she knew what sex was and that, therefore, she was not "mentally defective" as that term is used in the statute. Now, on appeal, appellant argues that the evidence was relevant to demonstrate an affirmative defense that he reasonably believed the victim was capable of consent. It is well settled that a party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal. *See, e.g., Frye v. State,* 2009 Ark. 110, 313 S.W.3d 10. Thus, we hold that appellant's argument is not preserved for our review. We likewise hold that appellant's confrontation argument is not preserved; appellant raised no confrontation-clause argument below, and we further note that this court has rejected the argument that our rape-shield statute violates an accused's right to confront the witnesses against him or his right to due process of law. *See Gaines v. State,* 313 Ark. 561, 855 S.W.2d 956 (1993); *Kemp v. State,* 270 Ark. 835, 606 S.W.2d 573 (1980).

Next, even if appellant was asserting the same argument that he raised below, we hold that appellant failed to present his argument below as prescribed by Ark. Code Ann. § 16–42–101(c) and that appellant failed to make a proper proffer of the evidence he wished to present. First, as explained above, § 16–42–101(c) provides that evidence directly pertaining to the act upon which the prosecution is based or evidence of the victim's prior sexual conduct with any person may be admitted if its relevancy is determined by the court. To establish such relevancy, the defendant must file a written motion, before resting, stating that the defendant has an offer of relevant evidence prohibited by the statute and describing the purpose for which the evidence is believed relevant. § 16–42–101(c)(1). The court then holds an in camera hearing on the motion. *Id.* § 16–42–101(c)(2)(A). A written record must be made of the hearing. *Id.* § 16–42–101(c)(2)(B). If the court determines that "the offered proof is relevant to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature," the court makes a written order detailing what evidence is admissible and what testimony may be elicited based upon that evidence. *Id.* § 16–42–101(c)(2)(C).

In the present case, appellant failed to follow the procedure set forth in Ark.Code Ann. § 16–42–101(c) for establishing relevancy and admissibility of evidence otherwise excluded by the rape-shield statute. The record does not contain a written motion filed by appellant requesting an exception for relevant evidence, nor does it contain a written record of an in camera hearing. We have previously held that failure to meet the requirements of § 16–42–101(c) prevents this court from reaching the issue on appeal. *See Allen v. State,* 374 Ark. 309, 287 S.W.3d 579 (2008); *Laughlin v. State,* 316 Ark. 489, 872 S.W.2d 848 (1994).

Finally, at the hearing on the State's motion in limine, appellant failed to proffer the evidence he wished to introduce regarding the victim's previous sexual conduct. This court has explained that

[t]he failure to proffer specific evidence renders a relevancy determination impossible. *Donihoo v. State,* 325 Ark. 483, 931 S.W.2d 69 (1996); *Byrum v. State,* 318 Ark. 87, 884 S.W.2d 248 (1994). Thus, where the defense seeks to introduce evidence of a rape victim's prior sexual conduct, but makes no proffer of the evidence, we will decline to consider the issue of its admissibility on appeal. *Id.; Gaines v. State,* 313 Ark. 561, 855 S.W.2d 956 (1993).

*Turner,* 355 Ark. at 546–47, 141 S.W.3d at 356. Thus, we hold that this court is precluded from reaching appellant's argument on appeal and affirm.

Affirmed.