SLIP OPINION

2015 Ark. 406

# SUPREME COURT OF ARKANSAS

**No.** CR–15–80

| | |
|---|---|
| JONATHAN THACKER | **Opinion Delivered** November 5, 2015 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. CR-2012-983] |
| V. | |
| STATE OF ARKANSAS | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| APPELLEE | |
| | AFFIRMED |

## RHONDA K. WOOD, Associate Justice

A jury convicted Jonathan Thacker of residential burglary and rape. Thacker was sentenced to imprisonment for eighteen years for rape and five years for residential burglary with the sentences to run concurrently. Thacker's sole issue presented is whether the circuit court erred in excluding evidence of DNA from semen samples found on the victim's bedsheet and pillow that were inconsistent with his DNA. We find no error and affirm the circuit court's ruling.

In 2012, the victim, Hilborn, awoke to a man's hands gripping her neck and choking her. Hilborn tried to fight off the attacker, but he subdued her. The man attempted to have vaginal intercourse with Hilborn in her bedroom. He initially was unable to obtain an erection and eventually could not maintain it even after he masturbated and forced her to orally stimulate him. The man then pushed her into her bathroom where he forced her to engage in anal intercourse. However, when he stopped momentarily to reach for a lubricant, Hilborn jumped out of an open bathroom window. She ran across the street to

1

a neighbor's house where she called 911. Police officers, who responded to the incident, found Thacker's wallet in Hilborn's bedroom.

At trial, Hilborn identified Thacker as her assailant. However, she admitted that when police showed her Thacker's driver's license photograph on the night of the incident she did not recognize him. It was not until the following day, after Thacker's photograph was shown on a news report as a person of interest in the rape, that she told police that Thacker was the man who had raped her. Hilborn's neighbor, Gary Eoff, also identified Thacker as the individual leaving Hilborn's home at the time of the incident, but on cross-examination, he admitted that he initially described the assailant as being much shorter than Thacker and with lighter colored hair.

Thacker testified in his defense at trial. He stated that he was at a friend's home, and later at his house, around the time the burglary and rape occurred. Thacker presented testimony from two witnesses in support of his alibi. He further explained that he left his wallet in Hilborn's home the previous week when he was there purchasing narcotics.

For his only point on appeal, Thacker argues that the circuit court erred in excluding evidence of semen that did not belong to him on the victim's bedsheet and pillowcase. Thacker advanced this issue in a pretrial motion pursuant to Arkansas Code Annotated section 16-42-101.[1] At the hearings, Thacker's counsel argued that the evidence was

_____

[1]Thacker initially filed a pretrial motion to admit the DNA evidence of semen on the victim's bedsheet. The court denied the motion. Later, the State tested an additional semen sample on a pillowcase and determined it did not contain Thacker's DNA. The State filed a motion to exclude evidence of this semen. The court heard arguments on the State's

relevant to his theory of misidentification. He argued that he should be permitted to introduce evidence that the two semen samples tested did not match his DNA profile; arguing that it could lead the jury to conclude that someone else committed the rape. The circuit court refused to admit the evidence, but it ruled that Thacker could make reference to the fact that his DNA was not located on any items that the police submitted to testing.

Under our rape-shield statute, evidence of a victim's prior sexual conduct is not admissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other reason. Ark. Code Ann. § 16-42-101(b) (Repl. 1999). The purpose of the rape-shield statute is to protect victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when the conduct is irrelevant to the defendant's guilt. *Stewart v. State,* 2012 Ark. 349, 423 S.W.3d 69.

The rape-shield statute grants an exception where the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact at issue and that its probative value outweighs its inflammatory or prejudicial nature. Ark. Code Ann. § 16-42-101(c). Thus, the statute is not a complete bar to evidence of a victim's sexual conduct but rather makes its admissibility discretionary with the circuit court pursuant to the procedures set out in the statute. *Id*. "Although the introduction of prior episodes of

motion and Thacker orally amended his prior motion to include the DNA found on the pillowcase. The court granted the State's motion and denied Thacker's motion to admit the DNA evidence.

SLIP OPINION

sexual conduct to attack the credibility of the victim is not absolutely barred by the rape-shield statute, it has been treated unfavorably by this court." *State v. Kindall*, 2013 Ark. 262, at 6, 428 S.W.3d 486, 490. The circuit court is vested with wide discretion in deciding whether evidence is relevant and admissible, and we will not overturn that decision absent clear error or a manifest abuse of discretion.

In support of his argument on appeal, Thacker argues that evidence of another person's semen at the crime scene was relevant and that its probative value outweighed any prejudice to the victim. He asserts that evidence of the semen is relevant because it makes it more probable that someone other than him was the rapist. He further argues that the semen's probative value—evidence of an alternative rapist—outweighs any embarrassment or humiliation the victim will suffer.

In response, the State asserts two grounds supporting its argument that the evidence has minimal probative value. First, there was overwhelming testimony at trial that Thacker was the person who entered the victim's home and raped her. The victim identified Thacker as her rapist, and the victim's neighbor testified that he saw Thacker, who was his coworker at Cracker Barrel, walking through the victim's yard as he heard her yelling "help." Additionally, Detective David Short, who investigated the rape, located a wallet containing Thacker's driver's license, debit card, and Arkansas Game and Fish license in the victim's bedroom. Second, the State argues that the semen found in the bedroom is not probative because there is nothing to support an argument that the assailant left semen in the bedroom. The State also argues that the prejudicial effect of the semen is great. If

admitted, the victim would have to testify about her prior sexual history to explain the presence of the semen left by someone other than Thacker.

We cannot say it was clear error nor was it a manifest abuse of discretion for the circuit court to exclude evidence of the semen on the victim's bed. We are not convinced that this evidence was probative.

Thacker failed to show a link between the semen samples found on the victim's bed and the residential burglary and rape. Hilborn testified that when the rapist was attacking her in the bedroom he had difficulty obtaining, and was ultimately unable to maintain, an erection and did not ejaculate. Thus, it is unlikely the rapist left semen on the bedsheet or pillowcase; therefore, evidence of the DNA from those semen samples would not be probative to Thacker's theory of misidentification. At best, the evidence raises an inference that the victim had sexual intercourse with someone other than Thacker prior to the assault. Such an inference is of the type the rape-shield statute was designed to avoid.

Similarly, the prejudicial effect of the victim's prior sexual conduct is great when compared to the probative value. We do not agree with Thacker that the presentation of the semen would be limited to a few questions. If admitted, the State, through the victim's testimony, would be required to explain to the jury with whom, when, how, and where she engaged in sexual activity prior to the rape. It is clear that the potential humiliation and embarrassment to the victim, as well as the danger of unfairly prejudicing her character before the jury, outweighed the slight probative value of this evidence. Therefore, giving due deference to the circuit court, we hold that the court did not commit a manifest abuse

of discretion in denying Thacker's motions to admit such evidence pursuant to our rape-shield statute.

Affirmed.

BAKER and HART, JJ., concur.

DANIELSON and WYNNE, JJ., dissent.

**KAREN R. BAKER, JUSTICE, concurring.** Although I agree with the majority's conclusion in affirming Thacker's conviction, I write separately because I would employ a different analysis.

At issue is the State's motion to exclude DNA evidence and Thacker's motion to admit the DNA evidence that Thacker asserts was relevant to his theory of misidentification. Arkansas Code Annotated § 16-42-101, "Victim's prior sexual conduct," also known as our "rape shield" law, provides the standard by which the challenged evidence is presented to, and reviewed by, the circuit court. That section provides in pertinent part:

> (b) In any criminal prosecution under § 5-14-101 et seq. or § 5-26-202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.
>
> (c) Notwithstanding the prohibition contained in subsection (b) of this section, evidence directly pertaining to the act upon which the prosecution is based or evidence of the victim's prior sexual conduct with the defendant or any other person may be admitted at the trial if the relevancy of the evidence is determined in the following manner:
>
> > (1) A written motion shall be filed by the defendant with the court at any time prior to the time the defense rests stating that the defendant has an offer of relevant evidence prohibited by subsection (b) of this section and the purpose for which the evidence is believed relevant;
> >
> > (2)(A) A hearing on the motion shall be held in camera no later than three (3) days before the trial is scheduled to begin, or at such later time as the court may for good cause permit.

7

(B) A written record shall be made of the in camera hearing and shall be furnished to the Arkansas Supreme Court on appeal.

(C) If, following the hearing, the court determines that the offered proof is relevant to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature, the court shall make a written order stating what evidence, if any, may be introduced by the defendant and the nature of the questions to be permitted in accordance with the applicable rules of evidence[.]

Ark. Code Ann. § 16-42-101(b), (c) (Repl. 1999).

In *Gaines v. State*, 313 Ark. 561, 567–68, 855 S.W.2d 956, 959 (1993), we addressed the requirements mandated by Ark. Code Ann. § 16-42-101. Prior to trial, Gaines filed a motion and sought to introduce the evidence regarding the victim's virginity. The circuit court denied his motion and excluded the evidence. We affirmed the circuit court and explained that

we cannot decide whether the evidence of the victim's prior conduct was admissible under the circumstances of this case because Gaines failed to proffer what the evidence would have been. If the offered proof is relevant to a fact in issue, and its probative value outweighs its inflammatory or prejudicial nature, the court may allow it to be introduced consistent with our rules of evidence. Ark. Code Ann. § 16–42–101 101(c)(2)(C) (1987). While the record contains a report from the North Little Rock Police Department in which the victim claimed she was a virgin before the rape, defense counsel nowhere proffered the testimony of the witnesses he proposed to have testify to impeach her. This is not a new requirement; on numerous occasions, where the defense sought to introduce evidence of a rape victim's prior sexual activity but no proffer of this evidence was made, we declined to consider the admissibility issue of this evidence on appeal. *Duncan v. State*, 263 Ark. 242, 565 S.W.2d 1 (1978). *See Marcum v. State*, 299 Ark. 30, 771 S.W.2d 250 (1989); *Farrell v. State*, 269 Ark. 361, 601 S.W.2d 835 (1980); *Sterling v. State*, 267 Ark. 208, 590 S.W.2d 254 (1979); *Hill v. State*, 250 Ark. 812, 467 S.W.2d 179 (1971).

Likewise, in *Farrell v. State*, in affirming the circuit court's denial of Farrell's motion filed pursuant to Ark. Code Ann. § 16-42-101, we stated,

Although we understand the purpose for which appellant offers to introduce evidence of the victim's prior sexual conduct, no court can determine its relevancy and whether

that relevancy outweighs its inflammatory or prejudicial nature without hearing the evidence. At the hearing below, appellant not only did not produce any facts of the child's prior sexual conduct, he did not even contend that he knew of any. We have held many times that an evidentiary proffer must be sufficiently concrete and provide enough details for the trier of fact to perform its tasks. *Duncan v. State*, 263 Ark. 242, 565 S.W.2d 1 (1978). *Marion v. State*, 267 Ark. 345, 590 S.W.2d 288 (1979). Even without the "rape shield" statute one rule of evidence remains quite clear: no proof of the victim's prior sexual conduct means no admission of it.

*Farrell*, 269 Ark. at 363, 601 S.W.2d at 836.

In *Sterling v. State*, we again explained that the evidence sought to be introduced pursuant to Ark. Code Ann. § 16-42-101 must be proffered:

The motion stated the appellant had information which he desired to present to the court for consideration. We are unable to rule on evidence not proffered or questions not asked. *Duncan v. State*, 263 Ark. 242, 565 S.W.2d 1 (1978). . . . The record before us does not show there is any additional connecting evidence which renders the prior admitted consensual acts of sexual conduct relevant in the present case. Had the appellant proffered additional questions and answers we might have been in a position to agree with his contentions.

267 Ark. 208, 211, 590 S.W.2d at 254, 255-56 (1979).

Accordingly, in Thacker's case, at the two rape-shield hearings, Thacker must have offered the relevant evidence and also offered the probative value for which he believed the evidence to be relevant. However, the record demonstrates that Thacker failed to present the evidence at the rape-shield hearings that he now contends the circuit court erroneously refused to admit. A careful review of the record demonstrates that Thacker presented arguments solely of counsel. Simply put, Thacker did not proffer any evidence or offer any witness testimony. The isolated fact that another male's DNA was present on the victim's bed sheets and pillowcase is not necessarily probative. The victim was not called as a witness at either of the two rape-shield hearings, nor did Thacker present evidence to support his position. Without evidence of the time frame of the semen deposits on the bed sheets and

pillowcase Thacker sought to introduce, the bed sheets and pillowcase alone would have little probative value. There was no proffer whatsoever of any extrinsic evidence that Thacker may have had to aid us in determining if Thacker was prejudiced.[1]

Further, I would affirm the circuit court because Thacker waived his argument regarding Ark. Code Ann. § 16-42-101. The record demonstrates that, at trial, Thacker was presented with the opportunity to seek reconsideration of his motion but failed to do so.

During direct examination, when questioned regarding Thacker's wallet, which contained his driver's license and was found at the victim's home, the following colloquy occurred:

PROSECUTOR: Okay. Were you shown a driver's license?

VICTIM: I was. . . .

And he goes, "Do you know who this is? Do you know – have you ever seen this wallet?"

And I didn't even - - . . . I mean, I just immediately like, "There would be nobody's wallet in my house. No man comes in my house. The father of my child is the only person who does. There would be no reason why this wallet would be in the home."

He's, like, "so you don't have friends over? This couldn't be someone else's wallet?"

I was, like, "No. There is no company in my house. It's just me and my daughter. We do not have anyone else come into my home. I do not have platonic guy friends. No, that - - that's it."

---

[1]I must respectfully note that the dissent's analysis on this issue is flawed because it presumes facts and evidence that were not proffered or developed at either of the rape-shield hearings.

Also, later during the victim's testimony on direct examination, the following colloquy occurred:

PROSECUTOR: And a second ago we talked about Dan, Mica's father, and then you told the police that it was you and Mica living there. Is that right?

VICTIM: It was.

PROSECUTOR: Okay. And did you have a boyfriend at that time?

VICTIM: I had a gentleman that lived across the street that I was – – I had went on maybe two dates with so boyfriend is a very loose term. We hadn't even been intimate with each other. But we just kind of had – – I – – he noticed me from across the street and we just kind of started – –

PROSECUTOR: So y'all were kind of in the early stages of dating; right?

VICTIM: Yes, just flirting with each there, yeah, and stuff like that.

Further into the cross-examination, the topic arose again when the victim was questioned about her statement to law enforcement on the night of the crime – when she was shown Thacker's driver's license that was found at the scene. The following colloquy occurred:

DEFENSE ATTORNEY: You made another statement. Do you recall anything you said whether you have seen this person before?

VICTIM: Are you referring to the statement I made about the only two males who had been in – –

DEFENSE ATTORNEY: I'm almost there.

VICTIM: Okay.

DEFENSE ATTORNEY: There was – – there was one more statement. Let me

refresh your memory and tell me if it – – if it's wrong. You told the detective, "No I don't know who that man is. I've never seen that man before in my life." Is that about right?

VICTIM: Yes, sir.

DEFENSE
ATTORNEY: Okay. And then you went on to talk about the father of your child, your boyfriend. What did you tell Detective Short about that?

VICTIM: That there would be no reason that another man's wallet would be in my home because only my boyfriend Mike is the only man that would be in my house and that's not his wallet.

DEFENSE
ATTORNEY: Okay. And – – and the father of your child.

VICTIM: And the father of my child, yes.

Additionally, Detective David Short of the Conway Police Department, testified that upon interviewing the victim on the night of the incident, he showed her Thacker's driver's license and without objection testified:

DETECTIVE
SHORT: I went to her and asked her – – held out the driver's license and said, "Do you know who this person is?"

And she looked at it for just a few seconds and said "I don't have any earthly idea who that is. I've never seen that person before. Where was that at?"

And I said "It was in your bedroom."

Of which she said, "There should be nothing that belongs to a man in my house. My boyfriend has been at the VA for the last however many days it had been." I think he was scheduled to come home that day from treatment. And she said "There should be nothing that belongs to a man in my house whatsoever."

Although this line of questioning regarding other males in the victim's home arguably "opened the door" to allow the questions Thacker sought to ask, the record demonstrates that Thacker did not pursue those questions or ask the circuit court to reconsider its ruling in light of the testimony elicited by the state. Also, the line of questioning occurred not only in the State's direct examination, but during Thacker's *own questioning*. *See Sterling*, 267 Ark. at 211, 590 S.W.2d at 256 ("Appellant may cross-examine the alleged victim at the trial about events which may be relevant to his defense. It is possible that matters previously ruled inadmissible could become relevant.") Further, the record demonstrates that Thacker did not make any motion for reconsideration. Accordingly, by failing to present evidence to demonstrate the relevancy of the evidence he sought to introduce under Arkansas Code Annotated § 16-42-101(c), and by failing to ask the circuit court to reconsider in light of the testimony at trial, Thacker waived this argument on appeal, and I would affirm the circuit court.

In sum, based on the record before us and the evidence that was presented, I concur in the majority's disposition that the circuit court did not err in excluding the evidence.

HART, J., joins.

ROBIN F. WYNNE, Justice, dissenting. The rape-shield statute provides that evidence of specific instances of the victim's prior sexual conduct with any person is not admissible by the defendant, either through direct examination of any witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim or for any other purpose. Ark. Code Ann. § 16-42-101(b) (Repl. 1999). An exception is granted when the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Stewart v. State*, 2012 Ark. 349, 423 S.W.3d 69. The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the pending charges, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *McCoy v. State*, 2010 Ark. 373, 370 S.W.3d 241. In the present case, the evidence that semen on the victim's bed sheet and pillow case belonged to someone other than appellant falls under the rape-shield statute only if it belonged to someone other than the rapist. However, even accepting that the evidence at issue is governed by the rape-shield statute, I believe it was clear error or a manifest abuse of discretion to exclude it.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401 (2015). In the present case, the issue at trial was the identity of the rapist. The existence of semen at the scene of the rape that did not belong to appellant makes it less probable that he is the rapist; therefore, that

evidence is relevant.[1]  Under the rape-shield statute, evidence of prior sexual conduct is admissible only if its probative value outweighs its inflammatory or prejudicial nature.  In the present case, the evidence at issue is crucial for the defense theory of misidentification. On the other hand, it *might* be prejudicial to the victim if it were to force her to explain her sexual activities.  However, the purpose for which the defendant sought to introduce the DNA testing is only to show that he is not a match—not to attack the credibility of the victim or in any way malign her.  Considering the purpose of the rape-shield statute, I believe the probative value of the evidence outweighs any potential inflammatory or prejudicial effect.

Finally, I cannot agree with the State's contention that the evidence of guilt in this case was so overwhelming that any error in excluding the evidence at issue was harmless. The majority correctly notes certain discrepancies between the statements of the two eyewitnesses, the victim and her neighbor, initially describing the perpetrator and their subsequent identifications of appellant.  In addition, the neighbor, Gary Eoff, told a detective that he believed the man was John, who was a dishwasher at the Cracker Barrel where he and appellant worked.  Later, however, Eoff realized that John was a lot shorter than the man he had seen.  Both the victim and Eoff identified appellant after seeing his picture in the media as a person of interest in the case.  The testimony regarding the forensic evidence established that no DNA from appellant was found at the crime scene.  However, the State

---

[1]Of course, the jury would be entitled to give this evidence whatever weight it chose.

also elicited testimony regarding why DNA might not be found at a crime scene and implying that it is common not to find DNA evidence. Regarding the State's theory that there would be no semen because, as stated by the victim, the rapist did not ejaculate, the following colloquy took place with the state crime-lab forensic serologist, who was qualified as an expert:

> Q: If an allegations [sic] in a case do not include that someone had ejaculated, it is [sic] surprise not to find semen, just in general? I'm not talking specifically to this case.
>
> A: It can go both ways. If – – if you hear that information, you probably wouldn't find anything. But it's – – from case to case it changes.
>
> Q: Sure, absolutely.
>
> A: Somebody might have memory or something. Somebody might not have memory. I always look just to see – – just to be sure.

Notably, there was no other medical evidence on this point. The jury was left with the false impression that no semen had been found at the crime scene, and Thacker was denied the opportunity to present information critical to his defense of misidentification.

For the foregoing reasons, I believe the trial court committed clear error or a manifest abuse of discretion in excluding the evidence at issue. Therefore, I respectfully dissent.

DANIELSON, J., joins.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.